UNITED STATES DISTRICT COURT for the
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STEPHEN REICH, in his fiduciary capacity as a Trustee for the : 
LABORERS LOCAL 754 WELFARE FUND, PENSION FUND, :
SAVINGS FUND, ANNUITY FUND, INDUSTRY ADVANCEMENT :
FUND, NY HEALTH AND SAFETY FUND OF NORTH AMERICA, :
NYS LECET FUND, NYSLPA FUND, LABORERS' TRAINING FUND, :
754 LABOR MANAGEMENT COMMITTEE, and 754/CONTRACTORS :
ORGANIZING & DEVELOPMENT FUND; and STEPHEN REICH as :    **COMPLAINT**
the Business Manager of the LABORERS LOCAL UNION 754, :
   :
               Plaintiffs, :    21-cv- 9327
   :
        - against - :
   :
CASABELLA CONTRACTING OF NY, INC.; CASABELLA :
LANDSCAPING, INC.; DOE GENERAL CONTRACTOR; and :
DOE SURETY COMPANY, :
   :
             Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        PLAINTIFFS, STEPHEN REICH, in his fiduciary capacity as a Trustee for the

LABORERS LOCAL 754 WELFARE FUND, PENSION FUND, SAVINGS FUND,

ANNUITY FUND, INDUSTRY ADVANCEMENT FUND, NY HEALTH AND SAFETY

FUND OF NORTH AMERICA, NYS LECET FUND, NYSLPA FUND, LABORERS'

TRAINING FUND, 754 LABOR MANAGEMENT COMMITTEE, and 754/CONTRACTORS

ORGANIZING & DEVELOPMENT FUND (collectively, "FUNDS"); and STEPHEN REICH

as the Business Manager of the LABORERS LOCAL UNION 754 ("LOCAL 754"), by their

attorneys, Holm & O'Hara LLP ("H&O"), as and for their Complaint against CASABELLA

CONTRACTING OF NY, INC. ("CASABELLA CONTRACTING"), CASABELLA

LANDSCAPING, INC. ("CASABELLA LANDSCAPING"), DOE GENERAL

CONTRACTOR ("DOE CONTRACTOR"), and DOE SURETY COMPANY ("DOE

SURETY") (collectively, "Defendants"), allege the following:

## NATURE OF ACTION

1.      This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141, et seq., the New York Lien Law, N.Y. Lien L. § 70, and common law.

## JURISDICTION AND VENUE

2.      Jurisdiction over the causes of action alleged herein is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337; by 29 U.S.C. §§ 185(c), 1002(21), 1109(a), 1132(a)(2), 1132(a)(3), 1132(d), 1132(e)(1), 1132(f) and 1145.

3.      Venue is properly placed in the Southern District of New York under 29 U.S.C. §§ 185(a) and 1132(e)(2) in that the FUNDS are administered in the County of Rockland, New York, and LOCAL 754 has its principal place of business in the County of Rockland, New York.

## PARTIES

4.      Plaintiffs, the Laborers Local 754 Welfare Fund, Pension Fund, Savings Fund, Annuity Fund, Laborers' Training Fund and NY Health and Safety Fund of North America (collectively "Local 754 FUNDS") are jointly-trusteed, "multiemployer plans," established and maintained pursuant to various collective bargaining agreements and trust indentures, in accordance with 29 U.S.C. §§ 186(c)(5), (c)(6) and (c)(9). The Local 754 FUNDS are "employee benefit plans," within the meaning of ERISA, 29 U.S.C. §§ 1002(1), (2), (3) and 1132(d) (1), and are "multiemployer plans," within the meaning of 29 U.S.C. §§ 1002(37) and 1145. These ERISA Funds, the Local 754 FUNDS, are the administrator of all of the ERISA plans and non-ERISA plans (the "Plans"). Under the collective bargaining agreements, employers, including

defendant company, CASABELLA, are required to submit summaries of their payroll records and remit the required contributions, dues and assessments.

5.     Each of the Local 754 FUNDS is authorized to maintain suit as an independent legal entity under 29 U.S.C. § 1132(d) (1).  The Local 754 FUNDS are administered in Rockland County at 215 Old Nyack Turnpike, Chestnut Ridge, New York 10977.

6.     In addition, the Local 754 FUNDS collect assessments from certain employees covered by the collective bargaining agreements who authorized their employers to deduct union dues and assessments due to the union ("Union Amounts") from their wages.

7.     The Local 754 FUNDS also collect, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: Industry Advancement Fund, 754 Labor Management Committee, 754/Contractors Organizing & Development Fund, NYS LECET Fund and NYSLPA Fund. ("non-ERISA Plans"). Together, the Union Amounts and the amounts owed to non-ERISA plans are referred to as the "Non-ERISA contributions." The contributions to the ERISA plans and the non-ERISA contributions are collectively referred to as "Contributions." Plaintiff LOCAL 754 is an association formed under the laws of the State of New York, and is a "labor organization," within the meaning of 29 U.S.C. § 185, and an "employee organization" pursuant to 29 U.S.C. § 1002(4), representing employees in an "industry affecting commerce," as defined in 29 U.S.C. §§ 142(1) and 1002(12).  LOCAL 754 maintains its office in Rockland County at 215 Old Nyack Turnpike, Chestnut Ridge, New York 10977.

8.     Plaintiff STEPHEN REICH is a Trustee of the FUNDS and is entitled to bring this action in his "fiduciary" capacity of the FUNDS, within the meaning of ERISA, 29 U.S.C. §§ 1002(21) and 1132, and common law.  Plaintiff STEPHEN REICH is the Business Manager

of LOCAL 754 and in his administrative capacity is duly authorized to bring this action for union dues and assessments against CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

9.      Defendant CASABELLA CONTRACTING was, at all times relevant to this action, a domestic corporation organized under, and existing by virtue of, the laws of the State of New York, with its offices and principal places of business located at 2036 Albany Post Road, Croton on Hudson, NY 10520 and 182 Lindsey Avenue, Buchanan, NY 10511.

10.     Upon information and belief, CASABELLA CONTRACTING was, at all times relevant to this action, an "employer" within the meaning of 29 U.S.C. §§ 1002(5) and 1145, and is engaged in the construction business, which qualifies CASABELLA CONTRACTING as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

11.     Upon information and belief, CASABELLA CONTRACTING was a "trustee," with respect to monies received in connection with contracts for improvement of real property, within the meaning of Article 3-A of the New York Lien Law, N.Y. Lien L. §§ 70(1), 71.

12.     Defendant CASABELLA LANDSCAPING was, at all times relevant to this action, a domestic corporation organized under, and existing by virtue of, the laws of the State of New York, with its office and principal place of business located at 182 Lindsey Avenue, Buchanan, NY 10511.

13.     Upon information and belief, CASABELLA LANDSCAPING was, at all times relevant to this action, an "employer" within the meaning of 29 U.S.C. §§ 1002(5) and 1145, and is engaged in the construction business, which qualifies CASABELLA LANDSCAPING as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

14.     Upon information and belief, CASABELLA LANDSCAPING was a "trustee," with respect to monies received in connection with contracts for improvement of real property, within the meaning of Article 3-A of the New York Lien Law, N.Y. Lien L. §§ 70(1), 71.

15.     At all relevant times herein, defendant Doe General Contractor ("DOE GENERAL CONTRACTOR") was and is a business authorized to do business in New York.

16.     At all relevant times herein, defendant Doe Surety Company ("DOE SURETY") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

## PRELIMINARY STATEMENT

17.     On behalf of CASABELLA CONTRACTING, Laura Marcela Pignataro, the President of CASABELLA CONTRACTING, executed the Heavy, Highway and Utility Agreement between LOCAL 754 and the Contractors Association of Rockland County, Inc. ("CARC") and the Construction Industry Council of Westchester and Hudson Valley, Inc. ("CIC" or "Association") for the period April 1, 2015 through March 31, 2018, as the same may be amended, modified, or extended from time to time ("'15 Heavy Highway Agreement").

18.     The CARC previously ceased to exist and in its place the CIC became the successor in interest with respect to all further collective bargaining agreements.

19.     Neither the FUNDS nor LOCAL 754 have received a notice from CASABELLA CONTRACTING seeking to terminate the '15 Heavy Highway Agreement.

20.     CASABELLA CONTRACTING submitted payments to the FUNDS at the requisite rates for work performed during the Heavy Highway Agreement between LOCAL 754 and the Association covering the period April 1, 2018 through March 31, 2021 ("'18 Heavy Highway Agreement") and submitted to an audit of its books and records pursuant to the terms

of the '18 Heavy Highway Agreement, thereby demonstrating its intent to be bound to the terms and conditions of the '18 Heavy Highway Agreement.

21.     CASABELLA CONTRACTING employed members of LOCAL 754 to perform work covered by the Heavy Highway Agreement between LOCAL 754 and the Association covering the period June 1, 2021 through May 31, 2025 ("'21 Heavy Highway Agreement"), thereby demonstrating its intent to be bound to the terms and conditions of the '21 Heavy Highway Agreement.

22.     On behalf of CASABELLA CONTRACTING, Laura Marcela Pignataro, the President of CASABELLA CONTRACTING, executed the Building Agreement between LOCAL 754 and the Construction Contractors Association of the Hudson Valley, Inc. ("CCAHV") for the period May 1, 2017 through April 30, 2020 ("'17 Building Agreement").

23.     Neither the FUNDS nor LOCAL 754 have received a notice from CASABELLA CONTRACTING seeking to terminate the '17 Building Agreement.

24.     CASABELLA CONTRACTING submitted payments to the FUNDS at the requisite rates for work performed during the Building Agreement between LOCAL 754 and the CCAHV covering the period May 1, 2020 through March 31, 2023 ("'20 Building Agreement") and submitted to an audit of its books and records pursuant to the terms of the '20 Building Agreement, thereby demonstrating its intent to be bound to the terms and conditions of the '20 Building Agreement.

25.     At all times relevant to the allegations of this Complaint, CASABELLA CONTRACTING and LOCAL 754 have been parties to and bound by the '15, '18, and '21 Heavy Highway Agreements (collectively, "Heavy Highway Agreement") and the '17 and '20 Building Agreements (collectively, "Building Agreement") (the Heavy Highway Agreement and

Building Agreement are collectively, "AGREEMENT") governing the rates of pay and the working conditions of individuals employed by defendant CASABELLA CONTRACTING performing work covered under the AGREEMENT.

26.     Article 6, Section 1, Paragraph E of the AGREEMENT provides that the parties agree that all contractors, whether prime, general, sub, or any other category of contractors, shall become parties to the AGREEMENT, and signatories thereof, upon request to the Union to furnish men to perform work covered under the terms and conditions of the AGREEMENT.

27.     CASABELLA CONTRACTING employed individuals to perform work that is covered under the AGREEMENT.

28.     CASABELLA CONTRACTING submitted some monthly payroll remittance reports to the FUNDS and paid some contributions, dues and assessments to the FUNDS.

29.     The AGREEMENT, including, but not limited to Articles 1 and 2, defines: (a) the employees covered by the AGREEMENT; and (b) the work covered by the AGREEMENT.

30.     Articles 6, 7, 8, 9, 10, 11, 15 and 17 of the AGREEMENT require CASABELLA CONTRACTING to remit contributions to each of the FUNDS for all employees employed by CASABELLA CONTRACTING and covered by the AGREEMENT, from the first day of employment forward, in the amounts specified by the AGREEMENT, for each hour of work performed.

31.      The contribution rates for each year are set forth in the rate sheets incorporated into the AGREEMENT.

32.     Articles 10, 12, 14, 16, 18 and 19 of the AGREEMENT require CASABELLA CONTRACTING to deduct and remit dues and assessments for all LOCAL 754 members, as per the amounts specified in the AGREEMENT, along with a list of employees and the number of

hours worked by each employee.

33.     The dues and assessments rates for each year are set forth in the rate sheets incorporated into the AGREEMENT.

34.     Articles 6, 7, 8, 9, 11, 17 and 19 of the AGREEMENT state that CASABELLA CONTRACTING agrees to comply with the Trust Agreements, By-Laws, Rules and Regulations of the respective FUNDS as the same may be amended from time to time and that the Trust Agreements, By-Laws, Rules and Regulations of the respective FUNDS shall be a part of the AGREEMENT as though the same were fully set forth therein.

35.     Articles 11 and 13 of the AGREEMENT and the Laborers Local 754 Joint Benefit Funds Collection and Audit Procedures, as adopted by the Trustees of the FUNDS on March 8, 2012 (the "Collection and Audit Procedures"), require CASABELLA CONTRACTING to submit monthly payroll remittance reports listing the names, social security numbers and date of birth for all employees and the number of hours paid to each employee.

36.     The monthly payroll remittance reports state that "[t]he undersigned herein agrees to be bound by the terms and conditions of said collective bargaining agreement and to participate as a contributing employer in the fringe benefit funds" and that "the undersigned will faithfully follow the terms and conditions of the trust agreements and collective bargaining agreement."

37.     The AGREEMENT and the Collection and Audit Procedures require that monthly remittance forms should be filed by the Employer with the FUNDS by the tenth (10th) of the month following the month in which the work is performed.

38.     Any Employer that fails to make contributions to the FUNDS in the time frame permitted will be charged interest, penalties and expenses incurred in accordance with the

AGREEMENT and Section A of the Collection and Audit Procedures.

39.     Articles 19 and 21 of the AGREEMENT and Section B of the Collection and Audit Procedures require that CASABELLA CONTRACTING permit an examination of its books and records, including those of any affiliate or subsidiary, to enable determination and verification of the contributions due under the AGREEMENT by an auditor designated by a majority of the Union and management trustees of the respective FUNDS.

40.     Articles 19(C) and 21(C) of the AGREEMENT and Section B of the Collection and Audit Procedures require that CASABELLA CONTRACTING make available all books and records required by the auditor to enable said auditor to correctly ascertain and verify the proper contributions due.

41.     Pursuant to Article 19(C) and 21(D) of the AGREEMENT and Section A of the Collection and Audit Procedures, the trustees of the respective funds shall maintain appropriate actions, in law or in equity, to collect the proper amount of contributions due, for an accounting or for any other appropriate relief.

42.     In the event of delinquency for which the FUNDS are required to refer the matter to legal counsel to collect the delinquency contributions, Section A(8) of the Collection and Audit Procedures states that CASABELLA CONTRACTING shall pay to the FUNDS: (a) all unpaid contributions; (b) interest on the unpaid contributions determined at the prime rate; (c) liquidated damages of twenty percent (20%) of the amount of the unpaid contributions; plus (d) reasonable attorneys' fees and costs of collection.

43.     In the event of delinquency for which the FUNDS are required to refer the matter to legal counsel to collect the delinquent contributions, Article 21(E) of the Heavy Highway Agreement states that CASABELLA CONTRACTING shall pay to the FUNDS: (1) all unpaid

contributions; (2) interest on the unpaid contributions determined at the prime rate; plus (3) an amount equal to the greater of liquidated damages of twenty percent (20%) of the amount of the unpaid contributions; plus (4) reasonable attorneys' fees and costs of collection.

44.    In the event of delinquency for which the FUNDS are required to refer the matter to legal counsel to collect the delinquency contributions, Article 19(D) of the Building Agreement states that CASABELLA CONTRACTING shall pay to the FUNDS: (1) all unpaid contributions; (2) interest on the unpaid contributions at the rate of ten percent (10%) per annum; plus (3) an amount equal to the greater of (i) liquidated damages of twenty percent (20%) of the amount of the unpaid contributions or (ii) additional interest on the unpaid contributions at the rate of ten percent (10%) per annum; plus (4) reasonable attorneys' fees and costs of collection.

45.    Since on or about January 1, 2019 to date, CASABELLA CONTRACTING has failed to submit full payment of fringe benefit contributions to the FUNDS, and dues and assessments to LOCAL 754 for employees performing work covered by the AGREEMENT and has failed to permit an audit of its books and records for the period January 1, 2021 to date.

**Labor and Material Payment Bond**

46.    Upon information and belief, on behalf of CASABELLA CONTRACTING and/or DOE GENERAL CONTRACTOR, DOE SURETY issued a labor and material payment bond with respect to work performed by CASABELLA CONTRACTING ("L&M BOND").

47.    Upon information and belief, the L&M BOND defines CASABELLA CONTRACTING and/or DOE GENERAL CONTRACTOR as the "Principal" and DOE SURETY as the "Surety."

48.    Upon information and belief, the L&M BOND states a claimant is defined as one having a direct contract with the Principal or with a Sub-contractor of the Principal for labor,

material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.

49.     Upon information and belief, the L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly makes payment to all claimants for all labor and material used or reasonably required for use in the performance of the contract.

50.     The terms of the AGREEMENT bind CASABELLA CONTRACTING to LOCAL 754 and the FUNDS and govern all amounts justly due to the employees of CASABELLA CONTRACTING performing work within the terms of the AGREEMENT.

51.     Work covered by the AGREEMENT was performed by employees of CASABELLA CONTRACTING who are members of LOCAL 754 and/or participants in the FUNDS.

52.     Upon information and belief, DOE SURETY is obligated under the L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "such sum or sums as may be justly due" under the AGREEMENT to employees represented by LOCAL 754 and/or participants in the FUNDS for work performed by said employees.

53.     Upon information and belief, under the terms of the L&M BOND, DOE SURETY and DOE GENERAL CONTRACTOR and/or CASABELLA CONTRACTING are jointly and severally liable for all claims under the L&M BOND. Further, upon information and belief, DOE GENERAL CONTRACTOR and/or CASABELLA CONTRACTING agreed to indemnify DOE SURETY for all claims against the L&M BOND.

54.     Upon information and belief, pursuant to the L&M BOND, DOE SURETY and

DOE GENERAL CONTRACTOR and/or CASABELLA CONTRACTING are required to pay all amounts due the FUNDS and LOCAL 754 to the extent CASABELLA CONTRACTING defaults in its obligation to pay wages and wage supplements for LOCAL 754 members and/or FUNDS' participants employed by CASABELLA CONTRACTING who performed work.

**Factual Allegations as to CASABELLA CONTRACTING and
CASABELLA LANDSCAPING**

55.    At all times relevant to this action, Laura Marcela Pignataro, the President of CASABELLA CONTRACTING, was married to Frank Pignataro, the President of CASABELLA LANDSCAPING.

56.    Laura Marcela Pignataro at all times relevant to this action was the President of CASABELLA CONTRACTING, according to signature pages for the AGREEMENT and employer remittance reports signed by Laura Marcela Pignataro on behalf of CASABELLA CONTRACTING and according to various corporate records filed with the State of New York on behalf of CASABELLA CONTRACTING.

57.    Frank Pignataro is the President of CASABELLA LANDSCAPING, according to various corporate records filed with the State of New York on behalf of CASABELLA LANDSCAPING.

58.    Upon information and belief, Frank Pignataro has obtained a receivership over CASABELLA CONTRACTING through a divorce proceeding.

59.    According to the New York State Department of State, Division of Corporations ("NY Division of Corporations"), the address listed for service of process for CASABELLA CONTRACTING and for the Chief Executive Officer of CASABELLA CONTRACTING is 182 Lindsey Avenue, Buchanan, New York 10511.

60.    According to the NY Division of Corporations, the address listed for service of

process for CASABELLA LANDSCAPING and for the Chief Executive Officer of CASABELLA LANDSCAPING is 182 Lindsey Avenue, Buchanan, New York 10511.

61.     CASABELLA CONTRACTING has submitted signature pages for the AGREEMENT, employer remittance reports, and checks to the FUNDS bearing the address 182 Lindsey Avenue, Buchanan, New York 10511.

62.     According to pictures and captions posted on the publicly available CASABELLA LANDSCAPING Facebook page, CASABELLA LANDSCAPING has performed work covered by the AGREEMENT at the United States Military Academy at West Point, New York, including but not limited to: pouring concrete to create a workout station for cadets; locating a leak on a 10' pipe at a pool losing water and performing hand dig excavation; pouring concrete, leveling out a new floor and prepping for an office renovation; and core boring to repair leaking pipe in the pool.

63.     Officers of CASABELLA LANDSCAPING have inquired as to the delinquency due and owing to the FUNDS and LOCAL 754 by CASABELLA CONTRACTING.

**Notification to CASABELLA CONTRACTING**

64.     By letter to CASABELLA CONTRACTING dated December 4, 2020, the FUNDS demanded that CASABELLA CONTRACTING submit payment to the FUNDS for outstanding contributions, dues and assessments for work performed during the months of August 2020 through November 2020, as well as the balances owed for April 2020 and June 2020.

65.     The FUNDS made several additional requests by telephone, email and letter to CASABELLA CONTRACTING for the outstanding contributions, dues and assessments.

66.     By letter dated December 16, 2020, H&O, on behalf of the FUNDS, demanded

that CASABELLA CONTRACTING submit payment for contributions, dues and assessments due and owing to the FUNDS as well as remittance reports for the period August 2020 to date, submit payment for balances owed for April 2020 and June 2020, and submit payment and/or written objections with regard to an overtime issue for one of the participants.

67.     By email dated December 22, 2020, H&O, on behalf of the FUNDS, again demanded that CASABELLA CONTRACTING submit payment for the balance owed for April and June 2020, written objections and supporting documentation with regard to the overtime issue, and remittance reports and payment for the period August 2020 to date.

68.     On January 14, 2021, CASABELLA CONTRACTING submitted payment in the amount of $18,093.76, which consisted of the contributions, dues and assessments due and owing to the FUNDS for August 2020 and the balance for April and June 2020.

69.     By letter dated February 8, 2021, H&O, on behalf of the FUNDS, advised CASABELLA CONTRACTING that the FUNDS received the payment of $18,093.76, but had not received any payment or documentation as to the overtime issue or payment or remittance reports for work performed after the month of August 2020. H&O also advised CASABELLA CONTRACTING that the FUNDS' Auditor, MSPC Certified Public Accountants and Advisors, P.C. ("MSPC"), would be conducting an audit of CASABELLA CONTRACTING's books and records for the period January 1, 2019 through December 31, 2020.

70.     At the direction of the Trustees, MSPC performed an audit examination of CASABELLA'S books and records for the period January 1, 2019 through December 31, 2020.

71.     On June 8, 2021, MSPC issued an audit report of CASABELLA CONTRACTING for the period January 1, 2019 through December 1, 2020 showing a principal delinquency due and owing from CASABELLA to the FUNDS in the amount of $39,926.56,

interest in the amount of $996.71, and an accounting fee of $2,361.42, for a total amount of $43,284.69 (the "Audit").

72.     By letter dated June 10, 2021, the FUNDS provided CASABELLA CONTRACTING with a copy of the Audit and demanded that CASABELLA CONTRACTING submit payment to the FUNDS for the amount of $43,284.69 within ten (10) days of the date of the letter.

73.     By email dated June 10, 2021, the FUNDS demanded that CASABELLA CONTRACTING submit payment and remittance reports to the FUNDS for work performed during the period January 1, 2021 to date.

74.     By letter dated July 1, 2021, H&O, on behalf of the FUNDS, again demanded that CASABELLA CONTRACTING submit payment for the Audit delinquency in the amount of $43,284.69 within ten (10) days of the date of the letter.

75.     By letter dated July 14, 2021, H&O, on behalf of the FUNDS, made a final demand to CASABELLA CONTRACTING to submit payment for the Audit delinquency in the amount of $43,284.69 within ten (10) days of the date of the letter.

76.     By letter dated September 3, 2021 to the Warwick Fire District and copied to CASABELLA CONTRACTING, H&O, on behalf of the FUNDS, notified the Warwick Fire District that CASABELLA CONTRACTING failed to pay contributions, dues and assessments due and owing to the FUNDS for work performed by CASABELLA CONTRACTING on the Fire Station #3 Project in the approximate amount of $36,710.49, based on paystubs provided to the FUNDS by employees of CASABELLA CONTRACTING who are participants in the FUNDS, subject to verification by audit, and requested that the Warwick Fire District withhold monies on the project pursuant to Article 3-A of the New York Lien Law.

77. By voicemail and email dated September 13, 2021, H&O, on behalf of the FUNDS, notified counsel for the surety on the Fire Station #3 Project that CASABELLA CONTRACTING failed to pay contributions, dues and assessments due and owing to the FUNDS for work performed by CASABELLA CONTRACTING on the Fire Station #3 Project.

78. By email dated September 14, 2021, counsel for the surety requested additional information regarding the unpaid contributions, dues and assessments.

79. By email dated September 30, 2021, H&O, on behalf of the FUNDS, provided counsel for the surety with further information regarding the unpaid contributions, dues and assessments owed to the FUNDS by CASABELLA CONTRACTING and requested copies of certified payroll records from the surety for any and all projects bonded by the surety on which CASABELLA CONTRACTING performed work.

80. By email dated October 8, 2021 from the FUNDS to Ryan Chianelli of CASABELLA LANDSCAPING, in response to an inquiry from Mr. Chianelli regarding CASABELLA CONTRACTING's delinquency, the FUNDS notified Mr. Chianelli that a definitive delinquency amount could not be determined until an audit examination could be conducted and requested that, in the interim, CASABELLA CONTRACTING pay the past due audit for January 1, 2019 thru December 31, 2020 in the amount of $43,248.69; pay the outstanding contributions, dues and assessments due and owing for work performed on the Fire Station #3 project; submit Remittance Reports for the calendar year 2021; and forward contact information and location for a payroll audit of CASABELLA CONTRACTING's books and records for the year 2021.

81. By letter dated October 14, 2021, H&O, on behalf of the FUNDS, demanded that CASABELLA CONTRACTING submit payment for the Audit, payment for the estimated

delinquency for 2021 in an amount not less than $76,022.62, and schedule an audit examination of CASABELLA CONTRACTING's books and records for the period January 1, 2021 to date.

82.    Counsel for CASABELLA CONTRACTING contacted H&O and counsel for the parties participated in a conference call on November 4, 2021 regarding the Audit delinquency, 2021 delinquency, and demand for an audit of 2021.

83.    By email dated November 4, 2021 to counsel for the surety and email dated November 8, 2021 to counsel for CASABELLA and counsel for the surety, H&O, on behalf of the FUNDS, followed up as to the status of the unpaid contributions, dues and assessments on the Fire Station #3 project, and reiterated the FUNDS' request for certified payroll records and copies of labor and material payment bonds issued by the surety for projects on which CASABELLA CONTRACTING performed work.

84.    To date, CASABELLA CONTRACTING has failed to remit full payment of fringe benefit contributions to the Local 754 FUNDS and dues and assessments to LOCAL 754 for the period January 1, 2019 through December 31, 2020, interest, and accounting fees in the total amount of $43,284.69 pursuant to the Audit; has failed to remit contributions, dues and assessments for the period January 1, 2021 to date in an amount not less than $76,022.62, to be verified by complete audit; and has failed to permit a complete audit of its books and records for the period January 2021 to date.

**<u>Violations of the AGREEMENT, ERISA and Common Law</u>**

85.    In violation of the AGREEMENT and ERISA, CASABELLA CONTRACTING has failed to remit contributions to the FUNDS for the period January 1, 2019 to date and continuing throughout the pendency of this action.

86.    Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(3) and (g)(2), common law, the

AGREEMENT and the Collection and Audit Procedures, CASABELLA CONTRACTING is liable to the FUNDS for: (a) all delinquent contributions for the period January 1, 2019 through to date and continuing throughout the pendency of this action; (b) interest on all delinquent contributions (as defined in the AGREEMENT and the Collection and Audit Procedures); (c) the greater of liquidated damages of twenty percent (20%) or additional interest on all delinquent contributions (as defined in the AGREEMENT and the Collection and Audit Procedures); (d) the cost of the audit; (e) reasonable attorneys' fees, costs and expenses of the action, in accordance with ERISA; (f) along with such other legal and equitable relief as the Court deems appropriate.

87.    In violation of the AGREEMENT, CASABELLA CONTRACTING has failed to remit dues and assessments to LOCAL 754 for the period January 1, 2019 to date and continuing throughout the pendency of this action.

88.    Pursuant to the AGREEMENT and New York C.P.L.R. 5001 and 5004, LOCAL 754 is entitled to recover from CASABELLA CONTRACTING all delinquent dues and for the period January 1, 2019 through December 31, 2020, along with prejudgment interest at nine percent (9%) per annum from the date due to the date paid.

**Injunctive Relief**

89.    ERISA, 29 U.S.C. § 1132(g)(2), authorizes this Court to award appropriate equitable relief to redress certain violations of ERISA or the terms and conditions regarding payment of contributions under the AGREEMENT.

90.    Articles 19(C) and 21(C) of the AGREEMENT and Section B of the Collection and Audit Procedures require CASABELLA CONTRACTING to permit and cooperate in the conduct of an audit of its records.

91.    The FUNDS have repeatedly requested that CASABELLA CONTRACTING

submit to an audit examination of its books and records for the period January 1, 2021 to date, but CASABELLA CONTRACTING has failed to submit to a full audit examination for the period January 1, 2021 to date.

92.     CASABELLA CONTRACTING's pattern of failing to submit to an audit examination of its books and records for the period January 1, 2021 to date, as set forth in paragraphs "80" through "84" herein, indicates that CASABELLA CONTRACTING will not perform its obligations under Articles 19(C) and 21(C) of the AGREEMENT and Section B of the Collection and Audit Procedures unless it is ordered to perform specifically all of its obligations to the FUNDS and to LOCAL 754 under the terms of the AGREEMENT, including the production of all books and records necessary for a complete audit, and is restrained from continuing its refusal to perform.

93.     The FUNDS and LOCAL 754 are without an adequate remedy at law because, without access to the necessary records to perform a complete audit examination of CASABELLA CONTRACTING, the FUNDS and LOCAL 754 cannot determine the full amount of unpaid contributions, dues and assessments owed to the FUNDS and LOCAL 754 by CASABELLA CONTRACTING for the period of January 1, 2021 to date.

94.     The employee-beneficiaries of the FUNDS and the members of LOCAL 754 will suffer immediate, continuing, and irreparable injury, loss, and damage because CASABELLA CONTRACTING's failure to abide by the AGREEMENT will result in the FUNDS being required to deny the employee-beneficiaries for whom required contributions have not been made, the benefits provided thereunder, including but not limited to welfare benefits, thereby causing to such employee-beneficiaries substantial and irreparable damage.

95.     Further, the FUNDS will be required to provide to employees of CASABELLA

CONTRACTING benefits provided for under the AGREEMENT, notwithstanding CASABELLA CONTRACTING's failure to make required contributions, thereby reducing the corpus of such funds administered by the FUNDS and endangering the rights of employee-beneficiaries thereunder on whose behalf contributions are being made, all to their substantial and irreparable injury.

96.     The FUNDS are without an adequate remedy at law and the employee-beneficiaries of the FUNDS and the members of LOCAL 754 will suffer immediate, continuing, and irreparable injury, loss, and damage unless CASABELLA CONTRACTING is ordered to perform specifically all of its obligations to the FUNDS and to LOCAL 754 under the terms of the AGREEMENT and is restrained from continuing its refusal to perform.

97.     The balance of equities lies in favor of the FUNDS and LOCAL 754 to compel CASABELLA CONTRACTING to make available all necessary books and records for a complete audit for the period January 1, 2021 to date.

## CASABELLA CONTRACTING and CASABELLA LANDSCAPING are a Single Employer Under ERISA and Common Law

98.     Pursuant to ERISA and common law, CASABELLA CONTRACTING and CASABELLA LANDSCAPING are a single employer and CASABELLA CONTRACTING and CASABELLA LANDSCAPING are liable for one another's obligations under the AGREEMENT.

99.     Upon information and belief, CASABELLA CONTRACTING and CASABELLA LANDSCAPING have common management. At all times relevant to this action, Laura Marcela Pignataro and Frank Pignataro were married and officers of CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

100.    Upon   information   and   belief,   CASABELLA   CONTRACTING   and CASABELLA LANDSCAPING have common ownership. At all times relevant to this action, Laura Marcela Pignataro and Frank Pignataro were married and are owners of and/or affiliated with CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

101.    CASABELLA   CONTRACTING   and   CASABELLA   LANDSCAPING   have interrelated operations. Upon information and belief, CASABELLA CONTRACTING and CASABELLA LANDSCAPING employ the same LOCAL 754 members on CASABELLA CONTRACTING and CASABELLA LANDSCAPING projects.

102.    CASABELLA   CONTRACTING   and   CASABELLA   LANDSCAPING   use common offices to conduct their operations, which are located at 182 Lindsey Avenue, Buchanan, New York 10511.

103.    Upon   information   and   belief,   CASABELLA   CONTRACTING   and CASABELLA LANDSCAPING share centralized control over labor relations. Officers of CASABELLA LANDSCAPING have requested information from the FUNDS regarding delinquent contributions, dues and assessments due and owing to the FUNDS from CASABELLA CONTRACTING.

104.    There is an absence of an arm's length relationship between CASABELLA CONTRACTING and CASABELLA LANDSCAPING. At all times relevant to this action, the Presidents of CASABELLA CONTRACTING and CASABELLA LANDSCAPING have been married to each other.

105.    The respective employees of CASABELLA CONTRACTING and CASABELLA LANDSCAPING comprise a compatible bargaining unit, i.e. employees who are participants in the FUNDS and members of Local 754 Laborers. The employees of CASABELLA

CONTRACTING and CASABELLA LANDSCAPING perform work covered by the Building Agreement and the Heavy Highway Agreement and are subject to similar employment conditions, including but not limited to, an entitlement to wages and benefits, similar hours and work dates, and a seniority system.

106.    Upon information and belief, CASABELLA LANDSCAPING was created for the purpose of performing building work and heavy, highway and utility work as a single employer with CASABELLA CONTRACTING within the jurisdiction of LOCAL 754 in order to avoid obligations under the AGREEMENT, including but not limited to, remitting employee fringe benefit contributions to the FUNDS and dues and assessments to LOCAL 754.

107.    CASABELLA CONTRACTING and CASABELLA LANDSCAPING are liable for one another's obligations under the AGREEMENT as a single employer.

108.    As a result of the above, the FUNDS and LOCAL 754 are entitled to the same remedies and relief against CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

## CASABELLA CONTRACTING and CASABELLA LANDSCAPING are Alter Egos Under ERISA and Common Law

109.    Pursuant to ERISA and common law, CASABELLA CONTRACTING and CASABELLA LANDSCAPING are alter egos of one another and CASABELLA CONTRACTING and CASABELLA LANDSCAPING are liable for one another's obligations under the AGREEMENT.

110.    Upon information and belief, CASABELLA CONTRACTING and CASABELLA LANDSCAPING share a commonality of management. At all times relevant to this action, Laura Marcela Pignataro and Frank Pignataro were married and officers of CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

111.    CASABELLA CONTRACTING and CASABELLA LANDSCAPING share a commonality of business purpose, i.e. to perform building work and heavy, highway and utility work on construction projects, including but not limited to, public and private improvement of real property within LOCAL 754's geographic jurisdiction.

112.    CASABELLA CONTRACTING and CASABELLA LANDSCAPING share a commonality of operations. Upon information and belief, CASABELLA CONTRACTING and CASABELLA LANDSCAPING employ the same LOCAL 754 members on CASABELLA CONTRACTING and CASABELLA LANDSCAPING projects.

113.    CASABELLA CONTRACTING and CASABELLA LANDSCAPING share a commonality of equipment. CASABELLA CONTRACTING and CASABELLA LANDSCAPING use common offices to conduct their operations, which are located at 182 Lindsey Avenue, Buchanan, New York 10511.

114.    CASABELLA CONTRACTING and CASABELLA LANDSCAPING share a commonality of supervision and ownership. At all times relevant to this action, Laura Marcela Pignataro and Frank Pignataro were married and are owners of and/or affiliated with CASABELLA CONTRACTING and CASABELLA LANDSCAPING. Officers of CASABELLA LANDSCAPING have requested information from the FUNDS regarding delinquent contributions, dues and assessments due and owing to the FUNDS from CASABELLA CONTRACTING.

115.    Upon information and belief, CASABELLA LANDSCAPING was created for the purpose of performing building work and heavy, highway and utility work as an alter ego of CASABELLA CONTRACTING within the jurisdiction of LOCAL 754 in order to avoid

obligations under the AGREEMENT, including but not limited to, remitting employee fringe benefit contributions to the FUNDS and dues and assessments to LOCAL 754s.

116.   CASABELLA LANDSCAPING is liable for the obligations of CASABELLA CONTRACTING under the AGREEMENT as an alter ego.

117.   As a result of the above, the FUNDS and LOCAL 1 are entitled to the same remedies and relief against CASABELLA CONTRACTING and CASABELLA LANDSCAPING.

**Piercing the Corporate Veil of CASABELLA LANDSCAPING to CASABELLA CONTRACTING and/or Piercing the Corporate Veil of CASABELLA CONTRACTING to CASABELLA LANDSCAPING**

118.   Pursuant to ERISA and common law, and as set forth in the paragraphs above, CASABELLA CONTRACTING and CASABELLA LANDSCAPING are single employers and/or alter egos of one another, warranting the piercing of CASABELLA CONTRACTING's corporate veil to CASABELLA LANDSCAPING, and the piercing of CASABELLA LANDSCAPING's corporate veil to CASABELLA CONTRACTING.

119.   Upon information and belief, CASABELLA LANDSCAPING was created for the purpose of performing building work and heavy, highway and utility work as a single employer with and/or an alter ego of CASABELLA CONTRACTING within the jurisdiction of LOCAL 754 in order to avoid obligations under the AGREEMENT, including but not limited to, remitting employee fringe benefit contributions to the FUNDS and dues and assessments to LOCAL 754.

120.   As a result of the above, the FUNDS and LOCAL 754 are entitled to enforce the remedies and relief against CASABELLA CONTRACTING as against CASABELLA LANDSCAPING and vice versa.

**PLAINTIFFS FUNDS' AND LOCAL 754's FIRST JOINT CLAIM FOR RELIEF AGAINST CASABELLA CONTRACTING AND CASABELLA LANDSCAPING**

121.   Plaintiffs FUNDS and LOCAL 754 repeat and reallege each and every allegation contained in paragraphs "1" through "120" of this Complaint as if fully set forth herein.

122.   As set forth in the paragraphs above, the parameters of the corporate form separating CASABELLA CONTRACTING and CASABELLA LANDSCAPING have been abused.

123.   Pursuant to ERISA and the common law, CASABELLA CONTRACTING and CASABELLA LANDSCAPING are a single employer and/or alter egos of one another and should be held jointly and severally liable to the FUNDS and LOCAL 754 for one another's debts.

**AS AND FOR PLAINTIFF FUNDS' FIRST CLAIM FOR RELIEF AGAINST CASABELLA CONTRACTING and CASABELLA LANDSCAPING**

124.   Plaintiff FUNDS repeat and reallege paragraphs "1" through "123" hereof with the same force and effect as if such were fully set forth herein.

125.   CASABELLA CONTRACTING and CASABELLA LANDSCAPING's failure to submit contributions due and owing the FUNDS, as set forth in paragraphs "64" through "84" herein, constitutes a violation of ERISA, 29 U.S.C. §§ 1132 and 1145.

126.   Accordingly, pursuant to 29 U.S.C. § 1132(g)(2), the FUNDS are entitled to recover the following: (a) all unpaid contributions found due and owing for the period January 1, 2019 to date and continuing throughout the pendency of this action; (b) interest on all unpaid contributions (as defined in the AGREEMENT and the Collection and Audit Procedures); (c) the greater of liquidated damages in the amount of twenty percent (20%) or additional interest on all unpaid contributions (as defined in the AGREEMENT and the Collection and Audit Procedures);

(d) the cost of the audit; (e) reasonable attorneys' fees, costs and expenses of the action; and (f) such other legal and equitable relief as the Court deems appropriate.

### AS AND FOR PLAINTIFF FUNDS' SECOND CLAIM FOR RELIEF AGAINST CASABELLA CONTRACTING and CASABELLA LANDSCAPING

127.   Plaintiff FUNDS repeat and reallege each and every allegation contained in paragraphs "1" through "126" of this Complaint as if fully set forth herein.

128.   CASABELLA CONTRACTING's and CASABELLA LANDSCAPING's failure to submit contributions due and owing to the FUNDS, as set forth in paragraphs "64" through "84" herein, and continuing during the pendency of this action, constitutes a violation of the AGREEMENT and the Collection and Audit Procedures.

129.   Accordingly, the AGREEMENT and the Collection and Audit Procedures entitle the FUNDS to receive the following: (a) all unpaid contributions for period January 1, 2019 to date and continuing throughout the pendency of this action; (b) interest on all unpaid contributions (as defined in the AGREEMENT and the Collection and Audit Procedures); (c) the greater of liquidated damages in the amount of twenty percent (20%) or additional interest on all unpaid contributions (as defined in the AGREEMENT and the Collection and Audit Procedures); (d) the cost of the audit; (e) attorneys' fees, costs and expenses of the action; and (f) such other legal and equitable relief as the Court deems appropriate.

### AS AND FOR PLAINTIFF LOCAL 754's FIRST CLAIM FOR RELIEF AGAINST CASABELLA CONTRACTING and CASABELLA LANDSCAPING

130.   Plaintiff LOCAL 754 repeats and realleges each and every allegation contained in paragraphs "1" through "129" hereof with the same force and effect as if such were fully set forth herein.

131.   CASABELLA CONTRACTING's and CASABELLA LANDSCAPING's failure

to remit dues and assessments to LOCAL 754, as set forth in paragraphs "64" through "84" herein, constitutes a violation of the AGREEMENT.

132. Accordingly, CASABELLA CONTRACTING and CASABELLA LANDSCAPING are liable to LOCAL 754 for the following: (a) unremitted dues and assessments from January 1, 2019 to date and continuing throughout the pendency of this action; and (b) accrued prejudgment interest on said dues and assessments at the rate of nine percent (9%) per annum.

**PLAINTIFFS FUNDS' AND LOCAL 754's SECOND JOINT CLAIM FOR RELIEF AGAINST CASABELLA CONTRACTING AND CASABELLA LANDSCAPING**

133. Plaintiffs FUNDS and LOCAL 754 repeat and reallege paragraphs "1" through "132" hereof with the same force and effect as if such were fully set forth herein.

134. CASABELLA CONTRACTING's and CASABELLA LANDSCAPING's failure to submit to an audit examination of its books and records for the period January 1, 2021 to date, as set forth in paragraphs "80" through "84" herein, constitutes a violation of the AGREEMENT and 29 U.S.C. §§ 1132 and 1145.

135. Accordingly, the FUNDS and LOCAL 754 are entitled to an order pursuant to 29 U.S.C. § 1132(a)(3) directing CASABELLA CONTRACTING and CASABELLA LANDSCAPING to provide and make available its books and records for the purpose of allowing the FUNDS and LOCAL 754 to perform a complete audit to determine the full amount of contributions, dues and assessments due and owing for the period January 1, 2021 to date and continuing throughout the pendency of this action.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 754's FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST DEFENDANT DOE GENERAL CONTRACTOR**

136. Plaintiffs FUNDS and LOCAL 754 repeat and reallege each and every allegation

contained in paragraphs "1" through "135" hereof with the same force and effect as if such were fully set forth herein.

137.    Plaintiffs FUNDS' and LOCAL 754's joint supplemental claim for relief against DOE GENERAL CONTRACTOR is a state law claim based on the same underlying facts and circumstances as the ERISA claims against CASABELLA CONTRACTING and CASABELLA LANDSCAPING contained herein.

138.    Upon information and belief, at all times herein mentioned, defendant DOE GENERAL CONTRACTOR was the general contractor for work performed, whereby DOE GENERAL CONTRACTOR entered into a contract in which it agreed to furnish labor and material for construction on projects.

139.    Upon information and belief, DOE SURETY was, at all times herein mentioned, the surety for the projects, and furnished a labor and material payment bond to DOE GENERAL CONTRACTOR covering the labor and materials to be furnished for work performed and to be performed at the projects.

140.    Under the labor and material payment bond, defendants DOE SURETY and DOE GENERAL CONTRACTOR are jointly and severally liable for all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work on the projects, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

141.    Pursuant to the labor and material payment bond, DOE GENERAL

CONTRACTOR is liable for "all lawful claims" for claimant's work or labor to the extent that any payment to claimant for work performed by claimant is unpaid.

142.    Accordingly, the FUNDS and LOCAL 754 are entitled to judgment against DOE GENERAL CONTRACTOR for all amounts found due and owing by CASABELLA CONTRACTING and CASABELLA LANDSCAPING to the FUNDS and LOCAL 754 pertaining to work performed by CASABELLA CONTRACTING and CASABELLA LANDSCAPING at the projects including interest, damages, audit costs, attorney's fees, costs and expenses.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 754's**
**FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST**
**<u>DEFENDANT DOE SURETY</u>**

143.    Plaintiffs FUNDS and LOCAL 754 repeat and reallege each and every allegation contained in paragraphs "1" through "142" hereof with the same force and effect as if such were fully set forth herein.

144.    Plaintiffs FUNDS' and LOCAL 754's joint supplemental claim for relief against DOE SURETY is a state law claim based on the same underlying facts and circumstances as the ERISA claims against CASABELLA CONTRACTING and CASABELLA LANDSCAPING contained herein.

145.    Pursuant to the labor and material payment bond, NY State Finance Law §137, and NY Labor Law §220-g, DOE SURETY is liable "for such sum or sums as may be justly due" the FUNDS and LOCAL 754 pursuant to the AGREEMENT to the extent that CASABELLA CONTRACTING and CASABELLA LANDSCAPING refuse or fail to make payment to the FUNDS and LOCAL 754 for work performed.

146.    Accordingly, the FUNDS and LOCAL 754 are entitled to judgment against DOE

SURETY for all amounts found due and owing by CASABELLA CONTRACTING and CASABELLA LANDSCAPING to the FUNDS and LOCAL 754 pertaining to work performed by CASABELLA CONTRACTING and CASABELLA LANDSCAPING including interest, damages, audit costs, attorney's fees, costs and expenses.

**WHEREFORE**, plaintiffs FUNDS and LOCAL 754 hereby request judgment as follows:

i. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, in the form of an Order to compel the production of all books and records necessary to perform an audit examination pursuant to the AGREEMENT and ERISA;

ii. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING for all outstanding past due contributions to the FUNDS for the period January 1, 2019 to date, and continuing throughout the pendency of this action, pursuant to ERISA and the AGREEMENT;

iii. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for payment of all outstanding dues and assessments found due and owing for the period January 1, 2019 to date, and continuing throughout the pendency of this action, in accordance with the AGREEMENT and common law;

iv. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for accrued prejudgment interest on all on unpaid contributions found to be due and owing under the AGREEMENT, in accordance with ERISA and the AGREEMENT;

v. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for accrued prejudgment interest of nine percent (9%) per annum on all unpaid dues and assessments found to be due and owing under the AGREEMENT, in accordance with the AGREEMENT and common law;

vi. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for statutory liquidated damages of twenty percent (20%) or additional interest, whichever is greater, on all unpaid contributions found due and owing under the AGREEMENT, in accordance with ERISA and the AGREEMENT;

vii. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for the cost of the audit, in accordance with ERISA and the AGREEMENT;

viii. against CASABELLA CONTRACTING and CASABELLA LANDSCAPING, for attorneys' fees, costs and expenses associated with this action, in accordance

with ERISA and the AGREEMENT;

ix.     against DOE GENERAL CONTRACTOR for all amounts due the FUNDS and LOCAL 754 pursuant to the AGREEMENT to the extent CASABELLA CONTRACTING and CASABELLA LANDSCAPING refuse or fail to make payment to the FUNDS and LOCAL 754 for employees who performed work;

x.      against DOE SURETY for all amounts due the FUNDS and LOCAL 754 pursuant to the AGREEMENT to the extent CASABELLA CONTRACTING and CASABELLA LANDSCAPING refuse or fail to make payment to the FUNDS and LOCAL 754 for employees who performed work; and

xi.     for such other and further relief as the Court deems just and proper.


Dated: New York, New York
        November 11, 2021

                        HOLM & O'HARA LLP


                        By:  ___/s/ Carol G. Dell_____
                                Carol G. Dell (CG 7895)
                                *Attorneys for Plaintiffs*
                                3 West 35th Street, 9th Floor
                                New York, New York 10001
                                (212) 682-2280
                                c.dell@hohlaw.com

*Index No.*   **CV-**   *Year* **2021**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STEPHEN REICH, in his fiduciary capacity as a Trustee for the LABORERS LOCAL 754 WELFARE FUND, PENSION FUND, SAVINGS FUND, ANNUITY FUND, INDUSTRY ADVANCEMENT FUND, NY HEALTH AND SAFETY FUND OF NORTH AMERICA, NYS LECET FUND, NYSLPA FUND, LABORERS' TRAINING FUND, 754 LABOR MANAGEMENT COMMITTEE, 754/CONTRACTORS ORGANIZING & DEVELOPMENT FUND; and STEPHEN REICH as the Business Manager of the LABORERS LOCAL UNION 754,

                                                                    Plaintiffs,
                              - against –

CASABELLA CONTRACTING OF NY, INC.; CASABELLA LANDSCAPING, INC.; DOE GENERAL CONTRACTOR; and DOE SURETY COMPANY,

                                                                    Defendants.

---

## COMPLAINT

---

## HOLM & O'HARA LLP

*Attorneys for:*                  **Plaintiff(s)**

**3 West 35th Street, 9th Floor**
**New York, NY 10001**

---